46 So.2d 605 (1950)
KEYES CO.
v.
DADE COUNTY BAR ASS'N, et al.
Supreme Court of Florida, en Banc.
May 9, 1950.
Rehearing Denied June 12, 1950.
Grady C. Harris, Miami, for appellant.
Loftin, Anderson, Scott, McCarthy & Preston, Robert H. Anderson and Milton M. Ferrell, Miami, for appellees.
W.H. Poe, Orlando, as amicus curiae on behalf of the Florida Association of Realtors.
Robert D. Tylander, West Palm Beach, Norman H. Brown, West Palm Beach, William W. Arnold, Orlando, Harvie J. Belser, Bonifay, James T. Earle, St. Petersburg, R. Tion, and others, against the Keyes Com-Brownlee Eggart, Pensacola, Dante B. Fascell, Miami, John Marshall Green, Ocala, J.B. Hodges, Lake City, Julian Lifsey, Jr., Miami, John M. McCarthy, Fort Pierce, John B. Orr, Jr., Miami, Lloyd M. Phillips, Clearwater, Samuel J. Powers, Jr., Miami, Wayne K. Ramsay, Jacksonville, Paul G. Rogers, Douglas Bourne Shivers, Tallahassee, William P. Tomasello, Bartow, Tom B. Walker, Louis M. Wallace, Warren M. Goodrich, Bradenton, as amicus curiae for Junior Bar Section, Florida State Bar Association.
John M. Allison, Tampa, Charles S. Ausley, Tallahassee, and Edward S. Hemphill, Jacksonville, for Florida State Bar Ass'n as amicus curiae.
Ward & Ward, Miami, for Miami Beach Realty Board and others, amicus curiae.
THOMAS, Justice.
In this case we are going to depart from the pattern usually followed in stating the facts and the contentions of the parties as introductory to our discussion of relevant principles of law, and go directly to the heart of the controversy, which we shall consider more or less in an abstract way.
It is obvious from an examination of the record that the fundamental question of law involved is the line of demarkation between the sphere in which the realtor *606 operates under the statute regulating his business (Chapter 475, Florida Statutes, 1941, and F.S.A.) and the sphere in which a member of the bar operates when he represents clients who are parties to real estate transactions.
It is our view  and in adopting it we hope to escape the criticism that we are begging the question, temporizing, or compromising  that these ambits may be so defined that there will not be undue interference by the attorney in the activities of the qualified realtor, encroachment by the realtor on the field of the attorney, or oppressive requirement that persons engaged in all real estate transactions employ members of the bar.
At the very outset we should turn to paragraph two of Section 475.01, Florida Statutes, 1941, and F.S.A. (the Real Estate License Law) to determine just what it is that a realtor within his sphere is authorized to do. There it is specified that he may, for a consideration, appraise, auction, exchange, buy, or rent the property of another; also he may attempt to do these things and, in addition, may sell or "negotiate" a sale; further, any person is a broker who participates in the "procuring" of sellers, purchasers, lessors, or lessees of real property or who directs or assists "in the procuring of prospects, or the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing" of property. (Italics supplied.)
When we study the phraseology of this section of the act, and particularly the words which we have emphasized, we have a very definite impression that the part of the realtor is in its nature preliminary except in the matter of appraisals and, in some instances, rentals, and that in most, if not all, cases certain steps must ultimately be taken before the transactions between those whom he represents and those with whom they deal may be consummated by the exchange of instruments permanent in their nature. It is these additional steps which we think the realtor may not guide, or charge for guiding, and if the parties themselves wish a representative after the realtor has brought them together, they should select him from the Bar.
For instance, if a broker is employed to find a purchaser of the property of the one by whom he is employed or to effect its sale, he performs his service when he produces a prospective purchaser ready, willing, and able to buy or procures from the purchaser a binding contract. So it seems logical and fair that the realtor be restricted in the drafting of papers to those, such as a memorandum, deposit receipt, or the contract, as the case may be, recording his handiwork  that is, the bringing together of buyer and seller. Thus his activities would coincide with the service he was employed to perform and which, performed, would entitle him to his compensation. Once this point is reached, the field is the lawyer's, and he then should do those things necessary to the consummation of the contract.
While the preliminary arrangement between the buyer and the seller is from its nature relatively informal, despite the possibility that any contract drawn by the realtor may become the basis of a suit for specific performance, the services to be performed thereafter are usually highly technical and ones which could not likely be expertly discharged except by a trained attorney. The examination of abstracts, the quieting of titles, the conduct of suits in ejectment, and the like fall entirely within the sphere of the attorney; and the preparation and execution of the instruments effectuating the transfer should be under the lawyer's supervision, if the parties decide that they need expert advice and service.
After all, the fundamental purpose of the act, Chapter 475, supra, and, for that matter, the requirement that one must be fully qualified in order to practice law are for the protection of the public. By holding that there are two ambits within which the lawyer and the realtor may function, this security is safeguarded. It is patent from an examination of the act that a realtor must possess certain technical knowledge before he may be licensed to act, and of course the lawyer must likewise be qualified before he can hold himself out to the public as a member of that profession. We may assume that each, then, is fitted to perform the services within his field and *607 that if neither impinges on the other's territory each will prosper and the public will not suffer.
We are not shaken in this view because of the argument that ofttimes the instrument to be executed is a copy of one which has been prepared by an attorney. An instrument entirely adequate in one instance may be totally inadequate in another, and even if a particular form may be common to many transactions, it may not serve to effectuate the transfer if there are errors in the parties, the description, the signatures, or the acknowledgement. It too often happens that one receives an instrument which is valid on its face, only to discover later that it has been ineffectual, and then finds himself put to expense to correct an error which could well have been avoided had he been properly advised at the outset.
It must of course always be borne in mind that the things written here and those appearing in the act do not affect one who is acting as an attorney in fact, administrator, executor, receiver, trustee, master, or one dealing with property which he owns or partly owns.
We realize that situations will arise from time to time where the boundary here attempted to be drawn will become indistinct, but if the general principle we have undertaken to announce be kept in mind, neither attorney nor realtor will infringe on the field of the other, and the interests of a member of the public who seeks expert advice in one of the fields, or both, will be safeguarded.
It is our direction that the chancellor revise the decree specifically to enjoin whatever the appellant may be doing in the instant case beyond the scope of realtor.
Affirmed in part; reversed in part.
ADAMS, C.J., and CHAPMAN, THOMAS, SEBRING and ROBERTS, JJ., concur.
TERRELL and HOBSON, JJ., dissent.
TERRELL, Justice (dissenting).
The point for determination in this case is whether or not a real estate broker, in the usual conduct of his business, is authorized to draw or fill in blank deeds, contracts, notes, leases or lease agreements, assignments of leases, rental contracts, mortgages, satisfactions or releases of mortgages, options and other instruments essential to the bargain and sale of real estate.
The source of this question is an injunctive order secured by appellees in the Circuit Court of Dade County prohibiting appellant, a licensed real estate broker, from drawing or filling in blank forms of any of the instruments detailed in the preceding paragraph on the theory that in doing so it would be engaging in the practice of law without authority to do so.
The majority opinion, as I understand it, proceeds on the theory that when a parcel of real estate is to be sold, the law contemplates a sphere of activity for both the lawyer and the real estate broker and that there is a line of demarcation separating the sphere of each, that the real estate broker is limited to finding a purchaser ready, able and willing to buy, that he can draft a memorandum or contract, showing that he has secured such a purchaser, give him a receipt for a binder and perform other preliminaries leading up to the execution of the deed, but when he reaches this point he must call in a lawyer to guide him the rest of the way out. The opinion also points out that situations will arise in which this boundary line is indistinct, but if the rule so prescribed is followed, the public will be best served and everybody ought to be happy.
In so holding I think the majority opinion crawled over on the legislative side of the fence where judges are forbidden to be. The legislature has defined who are real estate brokers, has set limits to the scope of their activity and has prescribed the circumstances under which a lawyer may be called into a real estate transaction. Chapter 10233, Acts of 1925, as amended by Chapter 11336, Acts of 1925, Chapter 12223, Acts of 1927, now Chapter 475, Florida Statutes 1941, F.S.A., Chapter 22861, Acts of 1945 and Chapter 24090, Acts of 1947 are also pertinent.
*608 Section 475.01(2) is the governing law as to real estate brokers and is as follows: (2) "Every person who shall * * * for a compensation * * * appraise, auction, sell, exchange, buy or rent, * * * negotiate the sale, exchange, purchase or rental of any real property, or any interest in * * * the same, including * * * leases; or who shall advertise * * * that such person is engaged in the business of appraising, * * * selling, * * * leasing or renting real estate * * *; and every person who shall take any part in the procuring of sellers, purchasers, lessors or lessees of the real property, * * *; or who shall direct or assist in the procuring of prospects, or the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, * * *; each and every such person shall be deemed and held to be a `real estate broker' * * *."
I think the very terms of this act necessarily imply authority on the part of the real estate broker to execute a blank deed or any other instrument cataloged in paragraph one of this opinion, which he was enjoined from doing by the chancellor. The statute uses the terms "sale", "sell," "selling" and "closing of any transaction" a half dozen or more times. I never heard of a "sale" or "closing" the sale of real estate that did not contemplate a deed and it is common knowledge that the legislature so contemplated when it passed the act. This Court has repeatedly recognized its validity. State ex rel. Davis v. Rose, 97 Fla. 710, 122 So. 225; Zichlin v. Dill, 157 Fla. 96, 25 So.2d 4.
The Board, created to administer the act, has given it this interpretation for twenty-five years and hundreds of real estate brokers have governed themselves accordingly. In following this advice and shaping its policy, the Florida Real Estate Commission was guided by the counsel of very able lawyers and tens of thousands of deeds and other instruments affecting the transfer of real estate have been executed in reliance on the interpretation so given. Everybody conversant with the act when it was passed, thought this was what it meant.
But this is not all. Sections 475.04 and 475.05, Florida Statutes 1941, F.S.A., authorize the Florida Real Estate Commission to train real estate brokers in their ethical and legal duties and to promulgate rules and regulations to effectuate the purpose of the act. Such rules and regulations have been promulgated. Among other things they require that real estate brokers be drilled in and pass an examination in the rudiments of conveyancing in order that they may more intelligently perform the duties imposed on them. The said rules and regulations also instruct real estate brokers that they may fill in approved forms of contracts, deeds and other documents that are necessary to close a sale of real estate but that if the title is involved or other rights and conditions enter the picture, they should consult a lawyer. The execution of blank deeds and other instruments that have to do with conveyancing, were never before thought to be the exclusive prerogative of the lawyer. The scrivener made deeds long before the lawyer did and they are now made by the notary public, the sheriff, Justice of the Peace, Master and others. To hold that a trained real estate broker cannot fill in blank deeds and other instruments essential to conveyancing when notaries public, Justices of the Peace and others without such training may do so is a distortion of the statute that has no basis in reason.
Chapter 475, Florida Statutes 1941, F.S.A., defining the scope of a real estate broker's business, is limited to soliciting, selling, renting and simple conveyances of real estate. There is nothing hidden or mysterious about such transactions. The names of the parties, consideration paid, date of purchase, description and like primary facts is all that is involved. The act does not pretend to authorize the broker to examine abstracts, draw wills, trust agreements, term leases, tenancies at will, or tenancies at sufference and other instruments requiring any degree of legal advice or technical skill. The act and regulations pursuant to it require a lawyer for these. Real estate brokers are in terms prohibited from giving opinion as to titles. Section 475.01(2) of the Act leaves the lawyer as *609 he has always been. He can close any transaction that comes to his office but any one conversant with conveyancing knows that in hundreds of instances expert advice is not required and the legislature recognized this when it passed the act in question. It did not invade the lawyer's prerogative but on the other hand it dignified the real estate business.
Read with a knowledge of its history and purpose the act and regulations pursuant to it clearly define the place of the lawyer and the real estate broker as to real estate transactions. The Florida Real Estate Commission has made a studied effort to keep separate the function of the lawyer and the real estate broker. That it was a matter within the range of legislative action is not denied. Those who are dissatisfied with what the act provides should run for the legislature and try their hand at changing it. Real estate conveyancing is a pure question of policy with which the courts have no right to tinker, particularly when the legislature has covered the field. The majority opinion completely overlooked this and results in confusing a situation which the Florida Real Estate Commission has handled well and there is not the slightest showing of a public demand for change.
The legislature has never attempted to define what constitutes practicing law in this State but it has by the terms of the act in question defined and provided for the administration of the real estate brokerage business. No one is here charging that the act is being unlawfully administered, that inaccurate deeds or other instruments are being promulgated or that he has been damaged because of a deed filled in or prepared by a real estate broker. Appellees waited a quarter of a century to bring this suit despite the fact that the practice they assault was going on daily before their eyes in the most active real estate market in the world. I think they are estopped to raise the question at this late date.
Furthermore the majority opinion is premised on the theory that the sphere in which the real estate broker and the sphere in which the lawyer operates with reference to the bargain and sale of real estate, has run afoul of uncertainties, that the former is transgressing on the latter and that this Court should now "more or less in an abstract way" point out the line of demarcation between them. I think the legislature clearly defined this line in Chapter 475, Florida Statutes of 1941, F.S.A., as amended. The law does not treat concrete cases by abstract methods, so the majority opinion is nothing short of an attempt on the part of this Court to substitute its judgment for that of the legislature in a field where the legislature is preeminent.
I therefore dissent.
HOBSON, J., concurs.