STATE OF FLORIDA ex rel. JAMES A. YORK, v. HONORABLE W. H. BECKHAM, as Judge of the Juvenile and Domestic Relations Court in and for Dade County, Florida.

36 So. (2nd) 769
July 20, 1948
Rehearing denied September 21, 1948

June Term, 1948
En Banc

*William J. Pruitt, William F. Brown, Jr.,* and *Keen, O'Kelley & Spitz,* for appellant.

*A. C. Franks* and *H. H. Eyles,* for appellee.

CHAPMAN, J.:

Florence V. Jones, on July 29, 1947, filed in the Juvenile and Domestic Relations Court of Dade County, Florida, her amended petition and alleged, in part, that she was unmarried and the mother of James Richard Jones, a child born out of wedlock, and that the father thereof was James A. York and it was his legal duty to support and maintain the child, which he failed and neglected to do. The amended petition prayed (1) for the issuance of process; (2) that the court assume jurisdiction of the parties and the subject matter; (3) that after a hearing the court determine the paternity of the child; (4) that the court determine that James A. York is the father

of the child and that an appropriate order be entered requiring that he provide funds for its support and maintenance.

On the amended petition process issued out of said court and was served on James A. York, who appeared by counsel, and objected to the jurisdiction of the court over the parties and the subject matter for various constitutional reasons, and requested that the court enter an order dismissing the proceedings. The defendant's objections and motions were overruled and denied, and testimony was adduced and heard by the Honorable W. H. Beckham, Judge, in support of the allegations of the amended petition touching the paternity of James Richard Jones. Subsequently, on October 8, 1947, an order was entered by the court based on the allegations of the petition and testimony in support thereof, to the effect that James A. York was the actual and natural father of the illegitimate, and pertinent portions thereof are viz: "That the said James A. York, defendant, for the purpose of support of said child is the actual and natural father thereof and under a legal duty to provide a reasonable support for said child, James Richard Jones." In the same order James A. York was required to pay the sum of $15.00 per week for the support and maintenance of said child, James Richard Jones, until the further order of the court.

Suggestion for a writ of prohibition was filed in the Circuit Court of Dade County, Florida, in which it was represented that the Judge of the Juvenile and Domestic Relations Court of Dade County was without authority and power, under Chapter 19597, Acts of 1939, Laws of Florida, to receive the amended petition and issue process thereon or to compel James A. York to appear in said court and answer or defend the alleged charge; that the court was without jurisdiction to hear testimony based on the allegations of the petition and therefrom adjudicate and determine that James A. York was the actual and natural father of James Richard Jones or to make and enter an order requiring that from and after October 8, 1947, he pay each week into the registry of the court for the support of the illegitimate the sum of $15.00 until the further order of the court. The rule to show cause on the suggestion issued and Honorable W. H. Beckham, Judge,

answered and filed a motion to quash on various grounds, which motion was granted and the petition dismissed. An appeal has been perfected here.

Counsel for appellant contend that the Legislature of Florida was without constitutional authority to enact the portions of Section 3 of Chapter 19579, supra, which authorized the Juvenile and Domestic Relations Court to entertain the petitions, issue process, settle the pleadings, hear evidence and adjudicate the paternity of illegitimates in Dade County and by appropriate order provide for their support and maintenance as was done in the case at bar. Section 20 of Article 3 of the Florida Constitution prohibits the enactment of special and local laws in certain enumerated cases:

"Section 20.—The Legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers, or for the punishment of crime or misdemeanor; *regulating the practice of courts of justice,* except municipal courts; providing for changing venue of civil and criminal cases; granting divorces; changing the names of persons; vacating roads, summoning and empannelling grand and petit juries, and providing for their compensation; for assessment, and collection of taxes for State and county purposes; for opening and conducting elections for State and county officers, and for designating the places of voting; for the sale of real estate belonging to minors, estates of descendents, and of persons laboring under legal disabilities; regulating the fees of officers of the State and county; giving effect to informal or invalid deeds or wills; legitimizing children; providing for the adoption of children; relieving minors from legal disabilities; and for the establishment of ferries." (Emphasis supplied).

Pertinent portions of Section 3 of Chapter 19597, Acts of 1939, are viz:

"Section 3.—Certain Juvenile Courts to be Hereafter Known as Juvenile and Domestic Relations Courts: Jurisdiction Thereof.—That from and after the passage of this Act, those Juvenile Courts now established and existing, or here-

after established and existing, either by special or general act, and presided over by a judge required to be admitted to practice law in this State, in any of those counties of this State which now have, or may hereafter have, a population of over 180,000, according to any preceding official census taken under the authority of the State of Florida, or of the United States Government, shall hereafter be known as the Juvenile and Domestic Relations Court of the county in which located. In addition to the jurisdiction, power and authority now existing, or that shall hereafter be conferred thereon as Juvenile Courts, *such courts shall hereafter have and possess the additional jurisdiction, power and authority to receive, investigate, hear and determine complaints, render judgment, and make lawful and reasonable orders for the enforcement thereof, involving any of the following*: Concerning the violation of any Statutes of this State, now existing or hereafter enacted, for the protection of minors and involving any child under seventeen years of age, including violations of any statutes in which the gravamen of any such alleged violation, complaint or proceeding, is the failure or neglect of one member of a family to discharge any legal duty owed to another member of such family, directly and reasonably involving the moral or physical welfare of any child, and particularly laws relating to non-support, withholding support, school attendance, child labor, cruel treatment of children, offenses against the person and against decency and morality, when directly involving any child, or when contributing to the delinquency and dependency of any child; *concerning investigations to determine the paternity of any child alleged to have been born out of wedlock for the purpose of providing support thereof, and to provide for the reasonable support of such child by any person found to be the parent thereof, or to provide for the care, support and disposition of such child as a dependent child,* in case such child or either parent is residing within such county; ... " (Emphasis supplied).

Sections 18, 19, 20 and 21 of Chapter 19597, supra, are viz:

"Section 18.—Partial Invalidity.—If any provision, section, phrase, paragraph or portion of this Act shall be found

unconstitutional or invalid for any reason, such invalidity shall in no wise be construed as affecting the validity of the remaining portions of this Act.

"Section 19.—Misdemeanor.—Any person wilfully violating any provision of this Act shall be subject to be prosecuted and punished as for a misdemeanor.

"Section 20.—Contempt.—All powers for the punishment for contempt by Juvenile Courts in any such County shall exist and continue hereunder.

"Section 21.—Repeal.—All other Acts, or parts of Acts, whether General or Special Acts, in conflict herewith, are hereby repealed, but it is not the intention of this Act to in any manner repeal or change any Special or General Act establishing any Juvenile Court in any of the Counties in the State affected hereby, except such portions thereof as may be in conflict with any provision hereof."

It is admitted that Chapter 19597 supra established Juvenile and Domestic Relations Courts in Dade County and other counties of Florida having a population of 180,000 or more. These courts are given the jurisdiction and power to entertain complaints, hear testimony and therefrom adjudicate or determine the paternity of illegitimate children born in Dade and other Counties, and make and enforce orders against the person found to be father for the support thereof. In the other Counties of Florida the paternity of illegitimates and provisions for their support are controlled and determined by the several provisions of Chapter 742, F.S.A. It is unnecessary to distinguish or point out the conflicts in the several provisions of the two Acts regulating bastardy. It is established law that the Legislature is without power to enact or pass Special or Local laws "regulating the practice of courts of justice," but such laws shall be general and of uniform operation in the several counties of Florida. Section 20 of Article 3 of the Florida Constitution. Section 1 of Article 5 of the Florida Constitution gives the Legislature power to establish the Juvenile and Domestic Relations Court in Dade County, Florida.

The case of Skinner v. City of Eustis, 147 Fla. 22, 2 So. (2nd) 116, involved the constitutional validity of Section 4 of

Article 14 of Chapter 6683, Special Acts of 1913, Laws of Florida, being a charter provision of said city, and is viz: "That suits on all causes of action of whatever kind or nature, accruing against said City of Eustis shall be instituted within six months after the cause of action accrues." We held the above section void and unconstitutional because it attempted to "regulate the practice of the courts of justice," contrary to Section 20 of Article 3 of the Constitution. The "practice of courts of justice" within the statute meant the method of conducting litigation involving rights and corresponding defenses. In Mack v. Carter, 133 Fla. 313, 183 So. 478, we held that the regulation of the practice of the courts of justice meant "all that relates to the manner and time in which a case shall be conducted and tried from its inception to final judgment and execution."

The Constitution of Florida does not give exclusive jurisdiction of bastardy proceedings to any court provided for in Article 5 of our Constitution. It is therefore within the power of the Legislature under Section 1 of Article 5 of the Florida Constitution, as construed in State of Florida v. Sullivan, 95 Fla. 191, 116 So. 255, by statute to establish courts and prescribe their jurisdiction and this jurisdiction may be concurrent or original with the jurisdiction of those courts recognized by the Constitution. The Act, however, cannot "regulate the practice of courts of justice," as inferred in Section 20 of Article 3 supra and as construed by this Court. Proceedings in bastardy under the Constitution and our decisions are required to be general and of uniform operation in each county of Florida.

In State of Florida v. Sullivan, supra, when considering jurisdiction we in part said (text 95 Fla. 200-201) :

"In the terminology of the law the word jurisdiction as applied to courts has a well defined meaning and there is nothing in its inherent nature which renders it exclusive. That there are classifications in jurisdiction is as well known and understood as are the classifications of nouns, verbs and adverbs, or the classifications of trusts and corporations. Jurisdiction may be exclusive or concurrent, original, appellate or final. These classifications are frequently recognized

in the Constitution and statutes of our states.  An inspection of Sections 5, 11, 17, 18 and 22 of Article V dealing with the jurisdiction of various courts comprising our judicial system discloses that circuit courts and the Supreme Court have original and concurrent jurisdiction in certain matters.  In other matters a like rule applies to circuit and certain inferior courts, while the circuit courts have 'exclusive original jurisdiction in all cases in equity, also in all cases at law, not cognizable by inferior courts, and in all cases involving the legality of any tax assessment, or toll; of the action of ejectment and of all actions involving the title or boundaries of real estate, and all criminal cases not cognizable by inferior courts; and original jurisdiction of actions of forcible entry and unlawful detainer, and of such other matters as the legislature may provide.'— (Section 11, Article V, Constitution.)

"Jurisdiction then 'is not like a grant of property which cannot have several owners at the same time.'  Two or more courts may have concurrent jurisdiction of the same subject matter, and the rule is well settled that when the Constitution or the statute in specific terms vests jurisdiction in any tribunal without the qualifying term 'exclusive,' or words of equivalent import, the legislature may in its discretion vest the like jurisdiction in another court or tribunal. . . ."

It is next contended that prohibition in the case at bar is an inappropriate remedy because the issues have been fully determined and adjudicated by the Juvenile and Domestic Relations Court and the proper remedy is a review by an appeal.  This contention overlooks the power to enforce the order to pay the sum of $15.00 per week until the further order of the court and our many adjudications on this point. See State ex rel. Anderson v. Parks, 94 Fla. 91, 113 So. 702; State v. White, 40 Fla. 297, 23 So. 160; State v. Whitney, 66 Fla. 24, 63 So. 299, and similar cases.  Prohibition may be employed to restrain an excess of jurisdiction as well as to prohibit the exercise of judicial power where none exists. State ex rel. Marshall v. Petteway, 121 Fla. 822, 164 So. 872.

The following portion of Section 3 of Chapter 19759 viz: "concerning investigations to determine the paternity of any

child alleged to have been born out of wedlock for the purpose of providing support thereof, and to provide for the reasonable support of such child by any person found to be the parent thereof, or to provide for the care, support and disposition of such child as a dependent child, in case such child or either parent is residing within such county;" may be deleted as void and unconstitutional under Section 18 of said Chapter, being the severability clause of the Act, without doing violence to, impairing or otherwise affecting the remaining portions of said Section. It was error on the part of the lower court to discharge the rule nisi and to dismiss the relator's petition. The judgment appealed from is reversed with directions for further proceedings in the court below not inconsistent with the opinion and judgment above expressed.

THOMAS, C.J., TERRELL, ADAMS and SEBRING, JJ., and WHITE, Associate Justice, concur.

HOBSON, J., concurs specially.

HOBSON, J., concurring specially:

I concur in the opinion prepared by Mr. Justice CHAPMAN. It appears to me to be appropriate to observe that the cornerstone of said opinion is laid upon the premise that Chapter 19597, Laws of Florida, 1939, is a special or local law within the meaning and intendment of Section 20 of Article III of the Constitution of Florida. Said Section contains a prohibition against passing *special or local laws* in certain enumerated cases. The Act here under consideration is frequently called a general law of local application and is often referred to as a population Act. It is included in Volume 1, Laws of Florida, 1939, which volume carries the designation of "General Laws."

Laws of this type, which sometimes questionably are classified as general laws, *at the time of their enactment* usually affect only one county and, at most, several counties, but by no means *all* counties of Florida.

A proper interpretation to be given the verbiage "special or local laws" in Section 20, Article III in our Constitution is to, and I hereby do, construe it as meaning all laws which do not operate uniformly throughout the State of Florida, i. e.

those laws which are not effective in each and every county of this State. Such construction is consonant with the patent purpose of Section 20, Article III of the Florida Constitution.

It is my opinion, therefore, that it is appropriate to treat Chapter 19,597, Laws of Florida, 1939, as a special or local law within the meaning and intendment of Section 20 of Article III of the Florida Constitution.

I agree with Mr. Justice CHAPMAN that the portion of Section 3 of Chapter 19597, Laws of Florida, 1939, which he held to be void and unconstitutional is violative of Section 20, Article III of the Constitution of Florida.

Said portion of Section 3 of said law grants unto the Juvenile Courts in counties of a population of more than 180,000 power "to provide for the reasonable support of such child by any person found to be the parent thereof." In all other counties of the State the father of an illegitimate child can only be charged for such child's support the maximum sum of $50.00 per year.

Consequently, I am further of the opinion that said portion of Section 3 of Chapter 19597, Laws of Florida, 1939, offends the equal protection of the law clause of both the Florida and Federal Constitutions.